U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2019 SEP 12  AM 11: 00

CLERK

BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA, )
 )
Plaintiff, )
 )
v. )
 ) Civil No. 2:19-cv-161
 )
TERESA SANDERS and )
ANY TENANTS OR OCCUPANTS RESIDING AT )
6281 ROUTE 30 UNIT 1, WEST TOWNSHEND, )
VT 05359, )
 )
Defendants. )

## COMPLAINT FOR FORECLOSURE BY POWER OF SALE

**NOTICE TO DEFENDANTS:** In order to receive notice of the Foreclosure Judgment,

you are required by law to enter an appearance in this action either through an attorney or on

your own behalf after service has been made upon you by the United States of America and you

have returned your waiver of service of summons to the Office of the United States Attorney.

If such appearance is not filed with the Clerk of the United States District Court within sixty (60)

days of service of this Complaint, you will not receive notice of the Foreclosure Judgment which

will set forth the amount of money you must deposit to redeem the property and the amount of

time allowed you to redeem the property.

### NOTICE TO ALL TENANTS AND OCCUPANTS
### OF REAL PROPERTY AS REQUIRED BY 12 V.S.A. § 4932(c)(2):

**THE PROPERTY IN WHICH YOU LIVE IS BEING FORECLOSED UPON. YOU
ARE NAMED AS A DEFENDANT IN THE FORECLOSURE BECAUSE YOUR RIGHT
TO REMAIN ON THE PREMISES MAY END WHEN THE FORECLOSURE IS
COMPLETED. YOU MUST NOTIFY THE COURT OF YOUR NAME AND ADDRESS
IN ORDER TO BE KEPT INFORMED OF THE STATUS OF THE FORECLOSURE.**

**YOU ARE ALSO ADVISED, PURSUANT TO 12 V.S.A. § 4932(c)(3), THAT, IN THE EVENT THE OWNER IS UNABLE TO REDEEM THE PREMISES, YOU MAY BE REQUIRED TO VACATE THE PREMISES UPON 30 DAYS NOTICE.**

The United States of America, by its attorney, Christina E. Nolan, United States Attorney for the District of Vermont, brings this Complaint and states as follows:

### Introduction, Jurisdiction, and Parties

1. This is a civil action to foreclose by power of sale a mortgage given by Defendant Teresa Sanders ("the Borrower"), to the Plaintiff, the United States of America ("the United States"), on or about September 23, 2009.

2. This Court has jurisdiction in this matter under 28 U.S.C. § 1345 and 42 U.S.C. § 1490a.

3. On information and belief the last known addresses of the Defendants are as follows:

Teresa Sanders
6281 Route 30 Unit # 1
28 Sugar Maple Village Drive
West Townshend, VT 05359

Any Tenants or Occupants residing at
6281 Route 30 Unit #1
28 Sugar Maple Village Drive
West Townshend, VT 05359

4. Tenants or Occupants of the mortgaged premises, if any, are named as defendants pursuant to 12 V.S.A. § 4932(c)(1) for the purpose of providing notice of the pendency of this action.    The United States does not know whether the property will be tenant-occupied at the time the judgment order, decree of foreclosure, and order for judicial sale are entered in this proceeding.    Such tenants or occupants, if any, are entitled to notice of these proceedings but

2

are not entitled to a right of redemption.    In the event that the mortgage is foreclosed, the interests of all tenants or occupants, if any, shall be foreclosed and they shall have no further interest as tenants, occupants, or otherwise, in the property.    The United States, or the purchaser at the judicial sale, shall have the right to seek and enforce a writ of possession and neither the United States nor the purchaser at the judicial sale shall be obligated or required to institute an eviction proceeding against any tenants or occupants.

## Foreclosure by Power of Sale

5.    On or about September 23, 2009, Teresa Sanders duly executed to the United States of America a real estate mortgage covering certain land and premises described therein. Paragraph 25 of the mortgage reserves to the United States the right to foreclose the mortgage as authorized by state and/or federal laws, including but not limited to foreclosure by power of sale. A copy of the mortgage is attached to and made a part of this Complaint as Exhibit A.

6.    The mortgage was duly recorded on September 23, 2009 in the Town of Townshend Land Records in Book 101, Pages 385-392.

7.    The property subject to the mortgage was held by Teresa Sanders, a single person and is described therein as:

> Being a portion of those same lands and premises as were conveyed to the West Townshend Condominium Association, LLC by Warranty Deed of Lawrence Stein and Shelley Stein, dated November 14, 2008 and recorded December 1, 2008 at Book 99, Page 91 of the Land Records of the Town of Townshend.
>
> Being Unit 1 of West Townshend Condominiums including an undivided twenty percent (20%) interest in all the Common Elements, according to the Declaration of Condominium for West Townshend Condominiums, dated December 1, 2008 and recorded December 1, 2008 at Book 99, Page 95 in the Land Records of the Town of Townshend, Vermont, and the Condominium Plan for West Townshend Condominiums recorded January 1, 2009 at Plat 100B on the Land Records of the Town of Townshend, Vermont.

3

Title to the Unit is subject to the following:

1. The Declaration of Condominium and By-Laws, both dated and recorded December 1, 2008 and recorded at Book 99, Page 95 and Book 99, Page 133 respectively, on the Townshend Land Records, and any Rules and Regulations regarding the West Townshend Condominium Association which may be promulgated or amended at any time, including all benefits and obligations of ownership of a Unit in the Project as provided in the Declaration and Exhibits establishing the Project;

2. Real estate taxes for the current year and future years;

3. Conditions, restrictions, reservations, limitations and easements of record;

4. Portions of the premises are subject to perpetual flowage and flood easements granted to the United States of America by Warranty Deed of Bertha B. Rhodes, dated September 24, 1959 and recorded in Book 36, Page 279 of the Townshend Land Records.

This conveyance is subject to such rights of way, water and pipe line rights, utility and other easements as may exist of record upon the premises.

Reference is hereby made to the aforementioned instruments, the records thereof, and the references therein contained, in further aid of this description.

8. The mortgage was conditioned upon the payment of a certain promissory note, dated September 23, 2009, in the principal sum of $187,500.00 and bearing interest at the rate of 5.000% per annum. A copy of the note is attached to and made a part of this Complaint as Exhibit B.

9. The mortgage further secures repayment of any subsidy granted to the Borrower in the form of interest credit pursuant to a subsidy repayment agreement dated September 23, 2009. A copy of that agreement is attached to and made a part of this Complaint as Exhibit C.

10. Pursuant to the terms of an interest credit agreement dated September 23,

4

2009, the monthly payment due from the Borrower was reduced during the agreement's effective period.    The interest credit agreement expired on June 22, 2012 at which time the monthly payment shown on the face of the promissory note became effective. Pursuant to 42 U.S.C. § 1490a and the terms of the mortgage, any interest credit assistance received on any mortgages given on or after October 1, 1979 is subject to recapture upon the disposition of the property.

11.     The note provides that upon default by the Borrower of any payment, the United States at its option may declare all or any part of any such indebtedness immediately due and payable.    Because the Borrower, Teresa Sanders, defaulted on the note, acceleration and demand for full payment took place on September 4, 2014.

12.     Though demand was made, the Borrower has refused, neglected, or been unable to pay the amounts due pursuant to the terms of the note.    Efforts were made to meet with the Borrower to discuss her default and options to avoid foreclosure.    On October 14, 2014, Jon-Michael Muise attempted to meet with Ms. Sanders at the mortgaged property in order to explain the options available to her for avoiding foreclosure.    Ms. Sanders was not home and the property appeared vacant, but a pamphlet with contact information for USDA's Centralized Servicing Center ("CSC") was left at the residence.    Ms. Sanders did not contact CSC.    On September 10, 2019, Mr. Muise, having been informed that Ms. Sanders had returned to and was again residing at the Mortgaged Property, again attempted to meet with Ms. Sanders at the mortgaged property in order to explain the options available to her for avoiding foreclosure.    Although a vehicle was parked in the driveway, no one answered the door

5

and Mr. Muise left his business card and a pamphlet with contact information for CSC at the residence.

13.     There is due and owing by the Borrower to the United States as of September 9, 2019, the principal sum of $211,055.93, plus interest in the amount of $56,724.65, which interest accrues at the daily rate of $128.91.    There is further due and owing interest credit subsidy subject to recapture and principal reduction attributed to subsidy in the amount of $13,113.62, as described in paragraph 13 above, and escrow assessed at $721.57, and fees assessed at $26,125.21 and late charges of $130.08.

14.     Paragraph 7 of the mortgage authorizes the United States to do and pay for whatever is necessary to protect the United States' interest in the property, including paying any sums secured by a lien which has priority over the mortgage held by the United States.    Any amounts disbursed by the United States for this purpose become additional debt secured by the mortgage.

15.     On information and belief, in order that it may protect and preserve its security, the United States may be compelled to make advancements for payment of taxes, hazard insurance, water and sewer charges, or other municipal assessments. Although the nature and amount of such expenses are unknown to the United States at this time, the United States seeks recovery of those expenses, together with interest thereon.

16.     No other action has been brought to enforce the provisions of the aforesaid promissory note and real estate mortgage, and all conditions precedent to the bringing of the action have been performed or have occurred.

6

17.     The United States has complied with the requirements of all applicable

federal servicing regulations.

WHEREFORE, THE PLAINTIFF PRAYS:

a.     That the Defendants' equity of redemption be foreclosed in accordance with law;

b.     That the Court enter, pursuant to the United States' exercise of its right to a foreclosure by public sale, an order for public sale of the mortgaged premises;

c.     That the Court award expenses incurred by Plaintiff to preserve and protect its security;

d.     That the Court fix and allow attorney's fees and other costs and expenses incident to this proceeding;

e.     That the United States of America or the purchaser at the judicial sale be granted a writ of possession in the mortgaged premises;

f.     And for such other and further relief as this Honorable Court may deem just and equitable.

Dated at Burlington, in the District of Vermont, this 12th day of September, 2019.

Respectfully submitted,

UNITED STATES OF AMERICA

CHRISTINA E. NOLAN
United States Attorney

By: MELISSA A.D. RANALDO
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Melissa.Ranaldo@usdoj.gov

Handwritten, top-left:

Please return to:
Rural Development
28 Vernon St., Ste 333
Brattleboro, VT 05301

(Stamp, top-right):

TOWN CLERK'S OFFICE
TOWNSHEND, VT
RECEIVED FOR RECORD
SEP 2 5 2009
at 3 Hr. 30 Min. AM/PM
Vol. 101 Pg. 385-392
Attest _____ Town Clerk

---

Form RD 3550-14 VT
(Rev 10-04)

Form Approved
OMB No. 0575-0172

[Space Above This Line For Recording Data]

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR VERMONT

THIS MORTGAGE ("Security Instrument") is made on September 23 , 2009 . [Date]

The mortgagor is Teresa Sanders, (Unmarried)

("Borrower")

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 9-23-2009 | $187,500.00 | 9-23-2047 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose and in consideration of the debt, Borrower does hereby mortgage, grant, and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the Town of West Townshend , County of Windham , State of Vermont:

See attached schedule "A"

which has the address of 6281 Route 30, Unit #1
[Street]
West Townshend
[City]

Vermont 05359
[ZIP]
("Property Address");

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Page 1 of 6



GOVERNMENT EXHIBIT A

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has

agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower

will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15. Borrower's Copy. Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

17. Nondiscrimination. If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or

rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

18. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

23. The proceeds of foreclosure sale shall be applied in the following order: to the payment of (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24. Borrower agrees that Lender will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefits of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

25. Upon default by Borrower as aforesaid, Lender may foreclose this instrument as authorized or permitted by the

laws then existing of Vermont and of the United States of America, on terms and conditions satisfactory to Lender, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the Property at public auction to the highest bidder in one or more parcels at Lender's option and at the time and place and in the manner and after such notice and on terms as may be required by statute or as may be determined by Lender if not contrary to statute, or (c) written agreement hereafter made between Borrower and Lender.

**26. Release.** PROVIDED that if all the indebtedness hereby secured is duly paid and each and every covenant, condition, agreement, and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void; otherwise it shall remain in full force and effect.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider      ☐ Planned Unit Development Rider      ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

Signed, sealed, and delivered in the presence of:

_____ (Seal)
*Witness*                                 Teresa Sanders        *Borrower*

_____ (Seal)
*Witness*                                                    *Borrower*

STATE OF VERMONT
COUNTY OF __Windham__      } ss   ACKNOWLEDGMENT

On this __23rd__ day of __September__, __2009__, before me, the undersigned, a Notary Public in and for said State and County, personally appeared __Teresa Sanders__ _____, individually known to me and by me known to be the party(ies) executing the foregoing instrument, and to me acknowledged the said instrument to be executed by __her__ as __her__ free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal on the date above written.

My commission expires: __2/10/11__              _____
                                                                    *Notary Public*

(NOTARIAL SEAL)

**EXHIBIT A**
**DESCRIPTION OF LAND**

Being a portion of those same lands and premises as were conveyed to West Townshend Condominium Association, LLC by Warranty Deed of Lawrence Stein and Shelley Stein, dated November 14, 2008 and recorded December 1, 2008 at Book 99, Page 91 of the Land Records of the Town of Townshend.

Being Unit 1 of West Townshend Condominiums including an undivided twenty percent (20%) interest in all the Common Elements, according to the Declaration of Condominium for West Townshend Condominiums, dated December 1, 2008 and recorded December 1, 2008 at Book 99, Page 95 in the Land Records of the Town of Townshend, Vermont, and the Condominium Plan for West Townshend Condominiums recorded January 1, 2009 at Plat 100B on the Land Records of the Town of Townshend, Vermont.

Title to the Unit is subject to the following:

1. The Declaration of Condominium and By-Laws, both dated and recorded December 1, 2008 and recorded at Book 99, Page 95 and Book 99, Page 133 respectively, on the Townshend Land Records, and any Rules and Regulations regarding the West Townshend Condominium Association which may be promulgated or amended at any time, including all benefits and obligations of ownership of a Unit in the Project as provided in the Declaration and Exhibits establishing the Project;

2. Real estate taxes for the current year and future years;

3. Conditions, restrictions, reservations, limitations and easements of record;

4. Portions of these premises are subject to perpetual flowage and flood easements granted to the United States of America by Warranty Deed of Bertha B. Rhodes, dated September 24, 1959 and recorded at Book 36, Page 279 of the Townshend Land Records.

This conveyance is subject to such rights of way, water and pipe line rights, utility and other easements as may exist of record upon the premises.

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**RURAL HOUSING SERVICE**

## PROMISSORY NOTE

Type of Loan  SECTION 502

**SATISFIED**

Loan No.  37126260

Date:  09/23  20 09

This _____ day of _____ ,20 _____
United States of America
By: _____
Title: _____
USDA, Rural Housing Services

6281 Route 30 Unit #1

(Property Address)

West Townshend                    , Windham        VT
(City or Town)               (County)        (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 187,500.00 (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _____ 5 _____ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _456_ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ _____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in _456_ installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the _23rd_ day of each month beginning on __October 23__ , _2009_ and continuing for _455_ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _September 23_ , _2047_ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 919.29 _____ . I will make my monthly payment at _the post office address noted on my billing statement_ _____ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1



LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of___15__days after the date it is due, I will pay a late charge. The amount of the charge will be_____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

Account # 37126260

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch

Post Office Box 66889, St. Louis, MO 63166 _____ , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surely, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal
Borrower Teresa Sanders

_____ Seal
Borrower

_____ Seal
Borrower

_____ Seal
Borrower

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| (1) $ |  | (8) $ |  | (15) $ |  |
| (2) $ |  | (9) $ |  | (16) $ |  |
| (3) $ |  | (10) $ |  | (17) $ |  |
| (4) $ |  | (11) $ |  | (18) $ |  |
| (5) $ |  | (12) $ |  | (19) $ |  |
| (6) $ |  | (13) $ |  | (20) $ |  |
| (7) $ |  | (14) $ |  | (21) $ |  |
| | | | | TOTAL   $ | |

3

Form RD 3550-12
(Rev. 9-06)

**United States Department of Agriculture**
**Rural Housing Service**

Form Approved
OMB No. 0575-0172

Account # 37126260

## SUBSIDY REPAYMENT AGREEMENT

Only one agreement should be executed by the subject borrower for the subject property. The agreement is completed at the closing of the first Agency loan to the borrower regardless of whether or not they qualify for payment assistance at that time.

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but; payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Calculating Original Equity.

For Self-Help loans, the market value is the appraised value as determined at the time of loan approval/obligation, which is subject to completion per plans and specifications. If the house is not ultimately furnished under the Self-Help program, an amended agreement using the market value definition for all other transactions as outlined below must be completed.

For all other transactions, the market value is the lower of the:

    Sales price, construction/rehabilitation cost, or total of these costs, whichever is applicable
    OR
    Appraised value as determined at the time of loan approval/obligation.

If the applicant owns the building site free and clear or if an existing non-Agency debt on the site without a dwelling will not be refinanced with Agency funds, the market value will be the lower of the appraised value or the construction cost plus the value of the site.

Market value of property located at:

6281 Route 30 Unit #1

West Townshend, VT   05359                           $ 190,000.00

Less Prior Liens                        $ _____   Held by _____
                                        $ _____   Held by _____

Less Subordinate Affordable Housing Products   $ _____   Held by _____
                                        $ _____   Held by _____

Less Rural Development Single Family Housing Loans   $ 187,500.00
Equals Original Equity (If negative number use "0")   $ 2,500.00

Percent of Original Equity              $ 0.01 _____ %
(Determined by dividing original equity by the market value)

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, the amount to be recaptured is computed according to the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*


GOVERNMENT
EXHIBIT
C

5.

| months loan outstanding | 1 % | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
|---|---|---|---|---|---|---|---|---|
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(Average interest rate paid)

6. Calculating Recapture

Current Market value

LESS

Original amount of prior liens and subordinate affordable housing products,
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements (see 7 CFR part 3550).

EQUALS

Appreciation value. (If this is a positive value, continue.)

TIMES

Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).

EQUALS

Value appreciation subject to recapture. Recapture due equals the lesser of this figure or
the amount of subsidy received.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower | Date |
|---|---|
| Teresa Sanders | 09-23-2009 |
| Borrower | Date |
| | 09-23-2009 |

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

Teresa Sanders, et al.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Windham
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Melissa A.D. Ranaldo, AUSA, U.S. Attorney's Office, P.O. Box 570,
Burlington, VT 05402, (802) 951-6725

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☒ 1  U.S. Government<br>Plaintiff | ☐ 3  Federal Question<br>*(U.S. Government Not a Party)* | |
| ☐ 2  U.S. Government<br>Defendant | ☐ 4  Diversity<br>*(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original<br>Proceeding | ☐ 2 Removed from<br>State Court | ☐ 3 Remanded from<br>Appellate Court | ☐ 4 Reinstated or<br>Reopened | ☐ 5 Transferred from<br>Another District<br>*(specify)* | ☐ 6 Multidistrict<br>Litigation |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1490a

Brief description of cause:
Foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
307,871.06

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
09/12/2019

SIGNATURE OF ATTORNEY OF RECORD
*Melissa A.D. Ranaldo*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE  1012   MAG. JUDGE _____

2:19-CV-161